UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD M.,[1]<br><br>    Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY,[2] Commissioner of Social Security,<br><br>    Defendant. | Case No. 23-cv-02911-PHK<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Re: Dkt. 13 |

Plaintiff Bernard M., proceeding *pro se*, brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision by Defendant Martin O'Malley, Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's application for child disability benefits. [Dkt. 1]. Plaintiff has filed an Opening Brief, the Commissioner responded, and Plaintiff has replied. [Opening Brief, Dkt. 13; Response, Dkt. 15; Reply, Dkt. 16]. The Commissioner has also filed the Administrative Record. [Dkt. 11]. After carefully analyzing the briefs and the Administrative Record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the case for further proceedings consistent with this Order.

---

[1] In actions involving requested review of a decision by the Commissioner of the Social Security Administration, the Court generally uses the first name and initial of last name (or just the initials) of the plaintiff in the Court's public Orders out of an abundance of caution and regard for the plaintiff's privacy.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social Security, is substituted for his predecessor, Kilolo Kijakazi, Acting Commissioner of Social Security.

**I.     BACKGROUND**

Plaintiff was born on September 24, 1966, the alleged disability onset date. [Dkt. 11-3 at 30]. Plaintiff suffers from the condition of albinism which, among other issues, impacts his vision. [Dkt. 13 at 2]. Plaintiff has been legally blind his entire life, wore eyeglasses from childhood, and received his education through special education programs, starting with the Rhode Island Association for the Blind. [Dkt. 11-3 at 35–36]. Plaintiff eventually attained his high school degree and obtained a certificate from trade school in broadcasting and television communications. [Dkt. 11-3 at 40–41]. His employment history includes a temporary position through an educational program at a television station and other positions as a kitchen assistant, a snack bar assistant, a disc jockey, and a production assistant. *Id.* at 36, 41, 46, 57–58. Plaintiff testified that he "do[es]n't get regular jobs because my eyesight is that poor." *Id.* at 36.

On February 17, 2021, Plaintiff applied for child's disability insurance benefits on behalf of his deceased mother, pursuant to Title II of the Social Security Act ("the Act"). [Dkt. 11-3 at 37]. In his application, Plaintiff claimed that between September 24, 1984 and September 24, 1988, he was unable to work due to vision-related issues arising from his albinism. [Dkt. 13 at 2]. 20 C.F.R. § 404.350(a)(5) permits an adult who is eighteen years or older and has a disability before age twenty-two to file for child disability benefits. Accordingly, the relevant disability period is between September 24, 1984, Plaintiff's eighteenth birthday, and September 24, 1988, Plaintiff's twenty-second birthday. Thus, Plaintiff sought to establish that he suffered from a severe impairment prior to September 24, 1988, the day he attained twenty-two years of age.

The Commissioner denied Plaintiff's application on April 7, 2021, and confirmed that denial upon reconsideration, on June 15, 2021. [Dkt. 11-4 at 2–12]. Plaintiff then successfully requested a hearing before an administrative law judge ("ALJ"). [Dkt. 11-3 at 15]. That hearing took place on October 6, 2021, before ALJ Louis Bonsangue. *Id.* at 26. Plaintiff appeared and testified at the hearing, remotely through video teleconferencing, as a *pro se* litigant. *Id.* at 15. The ALJ also heard testimony from a vocational expert, Whitney Eng. *Id.*

At the hearing, Plaintiff first made opening remarks regarding his condition. *Id.* at 35. Plaintiff reported that he suffered from ocular albinism since birth. *Id.* Plaintiff stressed that his

condition resulted in special education, a tumultuous employment history, and receipt of Social Security Income payments since January of 1978. *Id.* at 36.

Next, the ALJ heard testimony from Plaintiff regarding his education and employment history. *Id.* at 40. Plaintiff informed the ALJ that, as of his eighteenth birthday, he graduated high school and was enrolled in trade school at the Sawyer School of Business in Rhode Island. *Id.* He testified that, upon graduation in 1985, he received a degree in broadcasting and television communications. *Id.* at 41. Plaintiff further testified that, after graduation, he moved to California but was unable to obtain regular employment. *Id.* After Plaintiff returned to Rhode Island in May 1987, he found employment as kitchen help at a fast-food restaurant, Rocky Point's Chowder House. *Id.* He believed his aggregate hours of work in that time period qualified as full-time employment. *Id.* 41–42.

With regard to his hospital records and special education, Plaintiff testified that, at the Sawyer School of Business, the Rhode Island Services for the Blind and Visually Impaired ordered special textbooks for him containing larger typeface. *Id.* at 42–44. Plaintiff further stated that he wore tinted glasses with corrective lenses due to vision graded between 20/190 and 20/200. *Id.* at 45 (due to an obvious and self-evident typographical error, the transcript of the Disability Hearing transcribes Plaintiff's central visual acuity as "2190" and "2200" which the Court corrects herein). Plaintiff admitted that, with regard to interacting with his environment, his intelligence, verbal skills, and visual and motor performance were age appropriate. *Id.* at 44.

On May 17, 2022, the ALJ issued a written decision in accordance with the Commissioner's five-step, sequential evaluation process. *Id.* at 15–21. The ALJ determined, at step one, that Plaintiff had not engaged in substantial gainful activity since September 24, 1966, the alleged onset date. *Id.* at 17. At step two of his analysis, the ALJ found that Plaintiff did not have an impairment that significantly limited his ability to perform basic work-related activities for twelve consecutive months. *Id.* at 18.

In reaching this conclusion, the ALJ first established that Plaintiff's albinism was a medically determinable physical impairment. *Id.* at 19. In determining whether Plaintiff's albinism significantly limited his ability to perform basic work-related activities, the ALJ found that

"[Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 19. The ALJ noted that (according to the ALJ's review of the record) no formal examinations or findings pertaining to Plaintiff's vision during the relevant period were available, and accordingly, the ALJ expressly cited and relied upon certain evaluations from 1978 as being instructive. *Id.* at 20. The results of these 1978 evaluations stated that Plaintiff "was able to complete all testing measures" and displayed "no evidence of motor deficits related to [Plaintiff's] visual limitations." *Id.*

Moreover, the ALJ noted that Plaintiff was able to complete high school and trade school in a timely manner and find some employment after returning to Rhode Island from California. *Id.* Based on these findings, the ALJ concluded that Plaintiff's albinism was not a severe impairment during the relevant period. *Id.* Consequently, the ALJ ended the inquiry and found that Plaintiff was not disabled at step two of the mandatory sequential analysis. *Id.* The ALJ's denial prompted Plaintiff's request for judicial review. [Dkt. 1].

## II.   STANDARD OF REVIEW

In Social Security disability cases, the Court's review is limited to determining whether: (1) substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant legal standards. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *see generally* 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. ----, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotation marks omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

A reviewing court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th

Cir. 2014) (citation and internal quotation marks omitted).  If "the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (citation omitted).

Further, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards."  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)).

### III. LEGAL STANDARD FOR ESTABLISHING A *PRIMA FACIE* CASE FOR DISABILITY

Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a plaintiff is disabled, an ALJ applies a five-step sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 404.1520.  The plaintiff bears the burden of establishing a *prima facie* case for disability in the first four steps of evaluation; however, the burden shifts to the Commissioner at step five.  *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022) (citing *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 416.960(c)(2)) ("Once a claimant establishes at steps one through four of the sequential evaluation process that she suffers from a severe impairment . . . [t]he burden then shifts to the Commissioner at step five[.]").

The five-step analysis proceeds as follows.  First, the claimant must not be engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).  Second, the claimant must have a "severe" impairment.  *Id.* § 416.920(c).  To be considered severe, a medical impairment must significantly limit physical or mental ability to do basic work activities and must be of twelve months duration or be expected to last for at least twelve months.  *Id.* §§ 416.909; 416.920(c).  Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix I of the regulation (a list of impairments presumed severe enough to preclude work), benefits are awarded without consideration of the claimant's age, education, or work experience.  *Id.* §§ 404.1520(d); 416.920(d).  Fourth, if

5

the claimant's impairments do not meet or equal a listed impairment, the ALJ will assess and make a finding about the claimant's residual functional capacity ("RFC") based on all relevant medical and other evidence in the claimant's case record. *Id.* §§ 404.1520(e); 416.920(e). The RFC measurement describes the most an individual can do despite his or her limitations. *Id.* § 404.1545(a)(1). If the claimant has an RFC sufficient to perform past relevant work, benefits will be denied. *Id.* § 404.1520(f). If the claimant cannot perform past relevant work, the ALJ will proceed to step five. *Id.*

At step five, the ALJ determines whether the claimant can make an adjustment to other work. *Id.* If the claimant can make an adjustment to other work, the ALJ will find the claimant is not disabled; if the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled. *Id.* §§ 404.1520(e), (g). There are two ways to make this determination: (1) by the testimony of an impartial vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2. *Id.* As noted, the burden shifts to the Commissioner at step five. *White*, 44 F.4th at 833.

## IV.   DISCUSSION

Plaintiff raises three issues on appeal. First, Plaintiff argues that the ALJ did not base his decision on substantial evidence. [Dkt. 13 at 2; Dkt. 16 at 2]. Second, Plaintiff avers that verification of specific medical records necessitates remand and review of the new documents. *Id.* Third, Plaintiff contends that he has a right to present his claim in person and that adjudicating his claim through a video teleconference was inadequate. *Id.* Because Plaintiff is proceeding *pro se*, the Court is cognizant that *pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *United States v. Quazi*, 975 F.3d 989, 993 (9th Cir. 2020) ("We are specifically directed to 'construe pro se pleadings liberally.'") (citation omitted).

Defendant opposes Plaintiff's appeal and insists that the ALJ properly considered the entire evidentiary record and followed the applicable law in determining that Plaintiff was not disabled during the relevant period. *See* Dkt. 15. The Court discusses each issue in turn.

### A. Whether the ALJ Erred in Assessing Plaintiff's Visual Impairments

In the instant case, Plaintiff challenges the ALJ's step two finding that Plaintiff's ocular albinism was not severe. *See* Dkts. 13, 16. Under step two, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.922(a). Additionally, under the second step, an impairment must meet the durational requirement of lasting, or being expected to last, for at least twelve months. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii). Importantly, an impairment must be established by objective medical evidence (medical signs, laboratory findings, or both) from an acceptable medical source and cannot be established on the basis of a claimant's symptoms alone. 20 C.F.R. §§ 416.913, 416.921; *see also* 20 C.F.R. § 404.1521 ("[I]mpairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques . . . . We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).").

The step-two inquiry has been defined as "a de minimis screening device [used] to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). A medical impairment may be found "not severe at step two ***only*** if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Glanden v. Kijakazi*, 86 F.4th 838, 844 (9th Cir. 2023) (quoting *Webb*, 433 F.3d at 686) (emphasis added and internal quotation marks omitted). Nevertheless, Plaintiff must still meet his burden to show "that he suffers from a medically determinable impairment" and "that these impairments or their symptoms affect his ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159–60 (9th Cir. 2001) (citing Soc. Sec. Rulings 96-3p and 96-7p); *see also Hurter v. Astrue*, 465 F. App'x. 648, 650 (9th Cir. 2012) (Plaintiff "had the burden of proving that her impairments affected her ability to perform basic work activities."). If "there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction," then the ALJ "must consider the individual to have no limitation or restriction with respect to that functional capacity." Soc. Sec. Ruling 96-8p. Additionally, when claimants are successfully treated

with over-the-counter medication and other conservative treatment, an impairment is not severe. *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007).

Plaintiff argues that the ALJ erred in finding that his ocular albinism did not constitute a severe impairment during the relevant period. [Dkt. 13]. The ALJ found that Plaintiff's visual limitations were non-severe because they did not result in more than minimal limitation of his functional ability, and (significantly) because there were no sufficient treatment records during the relevant period to support the severity of Plaintiff's vision. [Dkt. 11-3 at 20]. In concluding that Plaintiff's visual limitations were not severe at step two, the ALJ erred by: (1) ignoring an emergency room report from the Rhode Island Hospital during the relevant period; and (2) ignoring Plaintiff's testimony regarding his central visual acuity.

### 1. Rhode Island Hospital Report from the Relevant Time Period

In the evaluation of a disability, an ALJ must consider all medical opinion evidence. 20 C.F.R. § 404.1520(c). In interpreting this evidence, the ALJ need not "discuss every piece of evidence" and is not required to address evidence that is neither "significant nor probative." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). The ALJ, however, "must explain why significant probative evidence has been rejected." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (citation and internal quotation marks omitted).

Here, the ALJ failed to discuss an Emergency Department Report from Rhode Island Hospital from the relevant time period. [Dkt. 11-8 at 147 (Ex. 7F)]. The "History & Medical Exam" section of that report, dated August 1986, falls within the relevant period and states that Plaintiff was "legally blind." *Id.* The "Nurse" section of that report notes that the patient (Plaintiff here) "states he is legally blind." *Id.* The Court finds this report both significant and probative. *See Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) (concluding evidence favorable to the claimant was significant and probative); *Montalbo v. Colvin*, 231 F. Supp. 3d 846, 861 (D. Haw. 2017) ("Medical opinions that conflict with the ALJ's findings are considered significant and probative.") (citation omitted). Given the report's significance as the only direct medical evidence of Plaintiff's visual impairment during the relevant time period, the ALJ was required to provide legally sufficient

1    reasons for rejecting that report—the failure to even discuss the report constituted legal error.  *See*
2    *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (Although the ALJ "is not bound by the
3    uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, [] he cannot
4    reject them without presenting clear and convincing reasons for doing so.") (citation and internal
5    quotation marks omitted); *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) ("[A]n ALJ
6    errs when he rejects a medical opinion or assigns it little weight while doing nothing more than
7    ignoring it[.]").

8        While the ALJ's failure to consider this 1986 medical report was an error, the critical issue
9    is whether that error was harmless.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A
10   decision of the ALJ will not be reversed for errors that are harmless.") (citation omitted).  An ALJ's
11   failure to address a medical opinion is harmless error if it is "inconsequential to the nondisability
12   determination" and a reviewing court "can confidently conclude that no reasonable ALJ, when fully
13   crediting the [evidence], could have reached a different disability determination." *Marsh v. Colvin*,
14   792 F.3d 1170, 1173 (9th Cir. 2015) (citation omitted).  Here, the Court is unable to confidently
15   conclude that a reasonable ALJ, when fully crediting the Rhode Island Hospital report, would have
16   arrived at the same disability determination as the ALJ in the instant case.

17       The factual and legal importance of the 1986 Rhode Island Hospital report is evident from
18   and highlighted by the ALJ's nondisability determination which is based in part on the asserted
19   ***absence*** of medical records during the relevant period.  The ALJ concluded that "claimant does not
20   have an impairment or combination of impairments that significantly limits his or her ability to
21   perform basic work activities is consistent with the objective medical evidence." [Dkt. 11-3 at 20].
22   In reaching this determination, the ALJ stated that "there are ***no opinions*** regarding the claimant's
23   functionality during the relevant period." *Id.* (emphasis added).  To the contrary, the Rhode Island
24   Hospital report is from the relevant period, is a medical report from medical personnel examining
25   Plaintiff, and directly contradicts the finding because the report states that Plaintiff was ***at that time***
26   legal blind. [Dkt. 11-8 at 147].  While the Court is cognizant that a scanned pdf of the handwriting
27   in this nearly forty-year-old medical report can be somewhat of an obstacle to review, the text of the
28   medical report stating that Plaintiff is legally blind is not susceptible of misinterpretation or

misreading.

The error in the ALJ's decision is further evident from the ALJ's specific citation to and reliance on two evaluations from 1978. [Dkt. 11-3 at 20 (citing Ex. 1F and 2F in the Administrative Record, which are found at Dkt. 11-8 in this proceeding)]. The 1978 "evaluation" is **not** a medical evaluation at all, but rather is an "Intellectual Assessment" by Delta Consultants. [Dkt. 11-8 at 2]. That assessment was performed by two Ph.D. psychologists who were part of a "team specializing in diagnosis and treatment of learning and behavior disorders in children." *Id.* at 2–4. The purpose of that assessment was "to determine [Plaintiff's] intellectual functioning level" due to his "having some difficulty in school relating to his peers." *Id.* at 2. That assessment includes no medical examination (which is understandable given that the assessors were not licensed to practice medicine) and the report states that the only test administered was the "Wechsler Intelligence Scale for Children – Revised." *Id.* at 3.

The ALJ's reliance on this report for support of the determination that Plaintiff suffered no severe disability due to his vision highlights the error in failing to analyze the Rhode Island Hospital report from 1986. First, this Intellectual Assessment was from 1978, when Plaintiff was eleven years old and was performed six years prior to the Rhode Island Hospital report—well outside the relevant disability period. *Compare* Dkt. 11-8 at 147 (dated August 1986 in the signature block at the bottom), *with* Dkt. 11-8 at 2. Second, this Intellectual Assessment was not performed by medical doctors or nurses (unlike the Rhode Island Hospital 1986 report) and, by its own terms, only included an intelligence test. [Dkt. 11-8 at 3–4]. Third, the ALJ's Decision expressly states that the ALJ is relying on this 1978 intellectual assessment because the ALJ found that "no formal opthalmological examinations or related findings pertaining to the relevant period are available." [Dkt. 11-3 at 20]. That statement is clearly erroneous, because there does exist a medical record from the relevant period. That statement by the ALJ highlights the error in failing to consider the 1986 Rhode Island Hospital report and further compounds the error in relying on a non-medical intellectual assessment from 1978.

Similarly, the ALJ's citation to and reliance on another 1978 assessment underscores the error here. [Dkt. 11-3 at 20 (citing Ex. 2F in the Administrative Record, which is Dkt. 11-8 at 5)].

10

That second 1978 evaluation was performed by the Rhode Island Hospital's Child Development Center. [Dkt. 11-8 at 5]. That evaluation states that the "Test Administered" was the "Wide Range Achievement Test, Spache Diagnostic Reading Scales, and information assessments." *Id.* There is no record of a medical examination in this second 1978 evaluation. *Id.* For the same reasons as with the other 1978 assessment, the ALJ's reliance on this second 1978 evaluation highlights the error, particularly when there was a 1986 Rhode Island Hospital medical report in the Administrative Record.

Fundamentally, the written decision's statement that the ALJ found no medical evidence from the relevant time period as to Plaintiff's vision and the decision's complete failure to address this medical report strongly suggests that the 1986 evidence was either ignored or overlooked inadvertently. For these reasons, the Court cannot confidently state that a reasonable ALJ, when fully crediting the 1986 medical report in the context of all the other evidence in the record as a whole, would reach the same conclusion as the ALJ in this case. *Marsh*, 792 F.3d at 1173. Accordingly, remand is warranted because the failure to address the 1986 Rhode Island Hospital report was consequential to the ultimate nondisability determination. *See id.* at 1173–74 (remanding where the court could not "confidently conclude" the error was harmless).

### 2.     Plaintiff's Testimony

In evaluating testimony credibility challenges, the Court recognizes that "the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). "The ALJ's findings, however, must be supported by specific, cogent reasons." *Id.* (citation omitted). In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter*, 504 F.3d at 1035–36).

First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1035 (citation and internal quotation marks omitted). The claimant "need not show that her impairment could reasonably be expected to cause

11

the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* at 1036 (citing *Smolen*, 80 F.3d at 1282). Thus, "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick*, 157 F.3d at 722 (citation omitted).

Second, if there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (citation omitted). Further, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citation omitted); *see also Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (citation omitted). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (citation and internal quotation marks omitted).

Here, Plaintiff testified that he was disabled during the relevant period due to visual impairments resulting from his albinism. [Dkt. 11-3 at 35]. At the first step, the ALJ acknowledged this testimony and found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. *Id.* at 19.

At step two, the ALJ found that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* Following this statement, the ALJ merely summarized Plaintiff's testimony and the medical evidence contained in the record. *Id.* at 19–20. However, because the ALJ did not find any evidence of malingering, he was required to provide "specific, clear, and convincing reasons" for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1281.

The ALJ did not provide specific, clear, and convincing reasons for rejecting entirely Plaintiff's testimony. First, the ALJ's findings are based on a conclusion that the testimony was "not entirely consistent with the medical evidence"—but as discussed above, the 1986 Rhode Island

Hospital report is evidence that is both consistent with Plaintiff's testimony, and importantly, was never analyzed or discussed in the ALJ's decision but merely listed in the list of exhibits. [Dkt. 11-3 at 12–25]. Indeed, the ALJ merely summarized the two 1978 reports immediately after finding Plaintiff's testimony non-credible, but as noted, those two reports are not medical reports, are outside the disability period by several years, and are directly contradicted by the 1986 Rhode Island Hospital medical report. Thus, the ALJ's reliance on the two 1978 reports does not constitute a clear and convincing reason for discrediting Plaintiff's testimony. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) ("[The ALJ] simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination. This is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited.").

While an ALJ's credibility analysis need not be exhaustive, there must be sufficient justification set forth to enable the Court to assess whether the ALJ's findings were supported by substantial evidence. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F3d 1090, 1103 (9th Cir. 2014). Here, the ALJ's failure to link the specifically identified testimony (which the ALJ found not credible) to parts of the record supporting his non-credibility determination constitutes legal error. *Brown-Hunter*, 806 F.3d at 494 ("[The ALJ] did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error.").

Further, while the ALJ's summary of the 1978 reports implies that there may be discrepancies between Plaintiff's testimony and some of the evidence in the record, it is not the role of the Court to make this credibility determination. *Id.* at 494. The Court cannot affirm the ALJ's non-credibility determination based on the Court's own conclusions. *Id.* (holding "inconsistencies identified independently by the district court cannot provide the basis" upon which a court can affirm an ALJ's decision).

By failing to explain in clear and convincing terms why Plaintiff's testimony about his visual impairment caused by albinism was not credible, the ALJ's error was not harmless. An error is harmless if it is "inconsequential to the ultimate nondisability determination," *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006), or if despite the legal error, "the agency's path

13

may be reasonably discerned." *Treichler*, 775 F.3d at 1099.

Here, the ALJ's failure to address Plaintiff's testimony regarding his impaired central visual acuity is consequential. Plaintiff testified, without contradiction in the record, that his visual acuity during the relevant period ranged between 20/190 and 20/200. [Dkt. 11-3 at 45]. Significantly, the Act defines statutory blindness as central visual acuity of 20/200 or less in the better eye with the use of a correcting lens. 20 C.F.R. § 404.1581. Although the ALJ in the instant case summarized part of the Administrative Record in support of his step two denial of Plaintiff's claim, that alone was not sufficient to meet the "clear and convincing" standard required for discrediting testimony. *See Brown-Hunter*, 806 F.3d at 494 ("[P]roviding a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding claimant's symptom testimony not credible.") (emphasis in original). Further, the evidence the ALJ discussed and cited are two non-medical reports from 1978, and for the reasons discussed above, the substance of those two 1978 evaluations are not convincing to reject Plaintiff's testimony—particularly in light of the corroborating medical report from the relevant period in 1986. Thus, even if merely summarizing evidence in the record were somehow procedurally sufficient to support the ALJ's credibility rejection of Plaintiff's testimony, the substance of that evidence does not convincingly support that credibility rejection.

Further, because the ALJ made only a general finding that Plaintiff's testimony was "not entirely consistent with the medical evidence and other evidence in the record" without providing reviewable reasons for discrediting Plaintiff's testimony, the Court is unable to discern the agency's path. *Treichler*, 775 F.3d at 1099. The Court cannot substitute its own credibility conclusions for the ALJ's, and consequently, the error was not harmless. *Brown-Hunter*, 806 F.3d at 495. Accordingly, the Court must remand for further evaluation of Plaintiff's testimony consistent with the discussion set forth herein.

### B. Remedy

In reviewing a final decision by the Commissioner, a court may remand for additional fact finding or for an award of benefits. *Vertigan v. Halter*, 260 F.3d 1044, 1053 (9th Cir. 2001). When a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to

14

the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (citation omitted).

In the instant case, the ALJ failed to consider both the Emergency Department Report from Rhode Island Hospital and Plaintiff's testimony regarding his central visual acuity. Because this evidence presents unresolved issues, the Court concludes this case should be remanded for further administrative proceedings. *See Treichler*, 775 F.3d at 1107 (holding that when "there were outstanding issues that must be resolved before a proper disability determination can be made" the case should be "remanded for further proceedings, not an award of benefits").

Because the Court remands for further proceedings on this ground, it need not address Plaintiff's remaining arguments as they can be adequately addressed on remand, and any rulings here will not secure Plaintiff any relief beyond what has been granted. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

## CONCLUSION

For the reasons discussed herein, Plaintiff's motion to remand is hereby **GRANTED**. This action is **REMANDED** to the Commissioner for reconsideration and proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: April 22, 2024

_____
PETER H. KANG
United States Magistrate Judge